**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MOUSTAPHA TOURE,** | : | |
| | : | |
| ***Plaintiff,*** | : | |
| | : | **Case No.:** |
| **v.** | : | |
| | : | |
| **WELLS FARGO BANK, N.A.; and** | : | |
| **SRIHARI CHENNA,** | : | |
| ***jointly and severally,*** | : | |
| | : | |
| ***Defendants.*** | : | **JURY TRIAL DEMANDED** |

**COMPLAINT IN CIVIL ACTION**

AND NOW, comes Plaintiff, Moustapha Toure, by and through the undersigned counsel, HKM Employment Attorneys LLP, and, specifically, Justin M. Bahorich, Esquire, who files the within Complaint in Civil Action against Defendants, Wells Fargo Bank, N.A. and Srihari Chenna, jointly and severally, of which the following is a statement:

**PARTIES**

1. Plaintiff, Moustapha Toure (hereinafter "Plaintiff" or "Mr. Toure"), is an adult individual who currently resides at 1511 Patricia Drive, Apartment F, Yeadon, Delaware County, PA 19050.

2. At all times relevant, Mr. Toure was a member of the Pennsylvania National Guard, was a member of a uniformed service, and performed service in a uniformed service within the meaning of 38 U.S.C. § 4303(13) and (16).

3. Defendant, Wells Fargo Bank, N.A. (hereinafter "Wells Fargo"), is a national banking association with its main office located at 550 South 4th Street, Minneapolis, MN 55415, and which at all times relevant maintained and operated a place of business located at 101 North

Independence Mall East, 3rd Floor, Philadelphia, PA 19106 (the "Philadelphia Office"), where Mr. Toure was employed.

4. At all times relevant, Wells Fargo was an "employer" within the meaning of the Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA" — 38 U.S.C. §§ 4301, et seq.), 38 U.S.C. § 4303(4)(A), in that it paid salary and wages to Mr. Toure for work performed and had control over his employment opportunities.

5. At all times relevant, Mr. Toure was an "employee" of Wells Fargo within the meaning of 38 U.S.C. § 4303(3).

6. Defendant, Srihari "Sri" Chenna (hereinafter "Mr. Chenna"), is an adult individual with a last known address of 37 Abelia Lane, Newark, Delaware 19711. At all times relevant, Mr. Chenna was employed by Wells Fargo and served as the manager responsible for Mr. Toure's performance evaluations.

7. At all times relevant, Wells Fargo delegated to Mr. Chenna the performance of employment-related responsibilities with respect to Mr. Toure, including the review and approval of Mr. Toure's requests for military leave in Wells Fargo's human resources system of record, the conduct of Mr. Toure's performance check-ins, the authorship of his performance reviews, and participation in decisions concerning his continued employment.

8. At all times relevant, Mr. Chenna was accordingly an "employer" within the meaning of 38 U.S.C. § 4303(4)(A)(i).

9. Wells Fargo and Mr. Chenna are referred to collectively herein as "Defendants."

## JURISDICTION AND VENUE

10. This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 38 U.S.C. § 4323(b)(3), in that Mr. Toure's claims arise under USERRA, 38 U.S.C. §§ 4301, et seq.

11. Venue is proper in this District pursuant to 38 U.S.C. § 4323(c)(2), in that Wells Fargo maintains a place of business in this District.

12. Venue is also proper in this District pursuant to 28 U.S.C. § 1391(b)(2), in that a substantial part of the events and omissions giving rise to Mr. Toure's claims occurred in this District.

## FACTUAL ALLEGATIONS

### a. Wells Fargo hired Mr. Toure with full knowledge of his military service obligations.

13. On or about January 29, 2024, Wells Fargo hired Mr. Toure as an Audit Manager — Vice President in its Enterprise Technology Audit Group, within Wells Fargo's Internal Audit function, based at the Philadelphia Office.

14. Mr. Toure holds the Certified Information Systems Auditor (CISA) credential.

15. Mr. Toure's base compensation at the time of his termination was approximately $132,900.00 per year, paid at a gross rate of $5,115.39 per biweekly pay period.

16. At the time of his hire, Mr. Toure informed Wells Fargo of his membership in the Pennsylvania National Guard and of his attendant military service obligations.

17. Mr. Toure was also a member of Wells Fargo's veteran and service member employee legacy group, a fact known to Wells Fargo.

18. Beginning in or around September 2024, Mr. Toure provided his annual military schedule to his supervisors and submitted his requests for military leave through Workday, Wells Fargo's human resources system of record.

**b. Wells Fargo separated Mr. Toure's performance manager from the audit leads who supervised his daily work.**

19. Wells Fargo assigned Mr. Toure to discrete audits and projects.

20. The lead assigned to each audit directly oversaw Mr. Toure's day-to-day work on that audit.

21. The manager responsible for Mr. Toure's formal performance evaluations was a different individual from the audit leads and did not directly observe Mr. Toure's daily work.

22. In or around May or June 2025, Mr. Chenna became the manager responsible for Mr. Toure's performance evaluations, replacing Mr. Toure's prior manager.

23. Mr. Chenna had no substantive contact with Mr. Toure until in or around August 2025, when he introduced himself and assigned Mr. Toure a task to support.

**c. Mr. Toure gave Wells Fargo complete advance notice of his September 2025 military service and worked before departing for duty.**

24. Mr. Toure was scheduled to perform service in the uniformed services on September 3 and September 4, 2025.

25. To accommodate travel to his duty station, Mr. Toure worked a modified schedule on September 2, 2025.

26. In advance of that service, and consistent with Wells Fargo's ordinary practice, Mr. Toure circulated an Outlook calendar invitation entitled "Moustapha OOO – Military Duty 9/2 to 9/4," which showed him out of the office from 6:00 a.m. on Tuesday, September 2, 2025 through

6:15 a.m. on Thursday, September 4, 2025, and which stated: "I will be out of office for Military Duty."

27. Mr. Toure addressed that calendar invitation to the colleagues with whom he was then working, including Jennifer Lopez, Jamie Munoz, Robert Jenkins, Sayed Farhang, Kehinde Ifarinde, Dee Bell, and Paola Banda.

28. Mr. Toure also formally requested the corresponding military time in Workday.

29. Mr. Toure's notice satisfied, and exceeded, the advance notice contemplated by 20 C.F.R. § 1002.85.

30. Notwithstanding his noticed absence, Mr. Toure worked on September 2, 2025 and attended at least three substantive meetings with the leads of the audits to which he was assigned before departing for his duty station.

31. At approximately 9:29 a.m. on September 2, 2025, Mr. Toure attended a meeting with Jennifer Lopez, which lasted approximately twenty-eight (28) minutes.

32. At approximately 9:50 a.m. on September 2, 2025, Mr. Toure attended a check-in meeting with Mary Ellen Capik, which lasted approximately twenty (20) minutes.

33. At approximately 11:24 a.m. on September 2, 2025, Mr. Toure attended a touchpoint meeting with Jamie Munoz, which lasted approximately twenty-four (24) minutes.

34. Mr. Toure returned online later that day.

**d. Mr. Chenna treated Mr. Toure's properly noticed military absence as a performance deficiency.**

35. Within days of Mr. Toure's return from military service, Mr. Chenna contacted him and complained that Mr. Toure's Microsoft Teams status had displayed as "Away" for several hours on September 2, 2025.

36. Mr. Toure responded that his project team had been notified of his schedule in advance, that he had in fact worked on September 2, 2025, and that he had held several meetings with his project leads that morning before departing for military duty.

37. Mr. Chenna stated that he understood.

38. Notwithstanding that statement, Mr. Chenna raised Mr. Toure's September 2, 2025 military-related absence as a performance issue during a performance "check-in" that he conducted with Mr. Toure in the weeks that followed.

39. Mr. Toure's Microsoft Teams status on September 2, 2025 reflected nothing other than his properly noticed performance of service in the uniformed services.

40. Under USERRA, an employee is not required to ask for or obtain his employer's permission or approval to be absent in order to perform service in the uniformed services; the employee need only give the employer notice of pending service. 20 C.F.R. §§ 1002.87, 1002.88.

**e. Mr. Toure asserted his statutory rights in writing, and Mr. Chenna responded by withholding approval of his military leave.**

41. On Monday, October 6, 2025, at 9:18 a.m., Mr. Toure sent Mr. Chenna an electronic mail message entitled "Military Schedule," transmitting his military schedule and accompanying documentation.

42. In connection with that communication, Mr. Toure reiterated to Mr. Chenna that his military time is protected by law and that Wells Fargo had known of his military service since the time of his hire.

43. Mr. Chenna stated that he understood.

44. Mr. Toure thereafter again submitted his military leave requests for the year in Workday, each of which was routed to Mr. Chenna for action.

45. Mr. Chenna did not formally approve Mr. Toure's military leave requests until months after they were submitted.

46. In several instances, Mr. Chenna did not approve Mr. Toure's military leave requests until after the requested leave dates had already passed.

47. Mr. Toure complied with every notice practice Wells Fargo required of him.

48. Upon information and belief, Wells Fargo did not subject the leave requests of similarly situated employees who did not perform service in the uniformed services to comparable delay.

**f. Mr. Chenna injected Mr. Toure's military service into performance discussions that had nothing to do with it.**

49. Following Mr. Toure's October 6, 2025 communication, Mr. Chenna repeatedly raised Mr. Toure's military service in performance reviews and in performance-related conversations.

50. Mr. Chenna did so even where the subject matter of the review or conversation had nothing to do with Mr. Toure's military service or his absences.

51. Mr. Chenna recast Mr. Toure's properly noticed military leave as a purported failure to "communicate effectively," notwithstanding that Mr. Toure had circulated calendar invitations in advance and that the colleagues with whom he worked were aware of his schedule.

52. Mr. Chenna's repeated and unsolicited references to Mr. Toure's military service in performance discussions evidence hostility toward Mr. Toure's protected military obligations.

**g. Wells Fargo issued an informal warning that departed from its ordinary practice.**

53. In or around December 2025, Mr. Toure received an informal warning concerning the alleged quality of his work.

54. Mr. Toure had not received consistent negative feedback concerning the quality of his work at any time prior to that warning.

55. Mr. Toure was not the lead audit manager on the projects cited in the warning.

56. The leads of those audits, and not Mr. Toure, were responsible for the work product that the warning criticized.

57. In at least one instance identified in the warning, Wells Fargo changed the expectations governing Mr. Toure's work after he had completed that work, and without notice to him.

58. The December 2025 informal warning followed approximately two (2) months after Mr. Toure's October 6, 2025 written assertion of his statutory military leave rights.

**h. Wells Fargo terminated Mr. Toure without progressive discipline and refused to explain its decision.**

59. From December 2025 through March 2026, Wells Fargo provided Mr. Toure with no further meaningful corrective feedback.

60. Wells Fargo did not place Mr. Toure on a performance improvement plan or any other corrective action plan.

61. Wells Fargo did not subject Mr. Toure to any step of progressive discipline following the December 2025 informal warning.

62. On or about March 13, 2026, Mr. Toure used Paid Time Off in accordance with Wells Fargo's policies and procedures for doing so.

63. On or about March 14, 2026, upon Mr. Toure's return, Wells Fargo terminated his employment during a meeting that his manager scheduled that morning.

64. Wells Fargo told Mr. Toure that the termination was performance-related.

65. Mr. Toure asked why he was being terminated and received no substantive explanation beyond that statement.

66. Wells Fargo told Mr. Toure that he would receive termination paperwork by electronic mail.

67. Mr. Toure received no termination paperwork. He received only information concerning COBRA continuation coverage.

68. Wells Fargo disabled Mr. Toure's laptop access immediately upon his termination, thereby depriving him of access to the records documenting his work, his performance, his military leave requests, and his communications with Mr. Chenna.

**i. Wells Fargo's stated reason for terminating Mr. Toure is pretextual.**

69. Wells Fargo's stated reason for terminating Mr. Toure — alleged deficiency in the performance of his job duties — is pretextual.

70. Mr. Toure performed his job duties as instructed by the leads of the audits to which he was assigned.

71. Mr. Toure was not the lead audit manager on the projects Wells Fargo cited against him.

72. Wells Fargo terminated Mr. Toure approximately three (3) months after an isolated informal warning, without any intervening discipline and without any performance improvement plan.

73. Wells Fargo's decision followed approximately six (6) months of documented hostility by Mr. Chenna toward Mr. Toure's protected military service, beginning with Mr. Chenna's September 2025 complaint concerning a properly noticed military absence.

74. Wells Fargo's decision not to contest Mr. Toure's application for unemployment compensation benefits is inconsistent with its assertion that it discharged him for cause.

75. Upon information and belief, Wells Fargo maintains no contemporaneous documentation supporting its stated reason apart from the December 2025 informal warning, which was itself directed at work for which Mr. Toure was not responsible.

76. Mr. Toure's membership and service in the Pennsylvania National Guard, and his exercise of rights protected by USERRA, were motivating factors in Defendants' adverse treatment of him and in the decision to terminate his employment.

77. Mr. Toure has remained unemployed since March 14, 2026 and has performed ride-share driving work in mitigation of his damages.

**INDIVIDUAL LIABILITY OF DEFENDANT CHENNA**

78. USERRA defines the term "employer" to mean "any person, institution, organization, or other entity that pays salary or wages for work performed or that has control over employment opportunities, including . . . a person, institution, organization, or other entity to whom the employer has delegated the performance of employment-related responsibilities." 38 U.S.C. § 4303(4)(A)(i).

79. The implementing regulations confirm that the term "employer" includes a person, institution, organization, or other entity to which an employer has delegated the performance of employment-related responsibilities. 20 C.F.R. § 1002.5(d)(1)(i).

80. USERRA and its statutory predecessors are to be liberally construed for the benefit of those who left private life to serve their country. *Fishgold v. Sullivan Drydock & Repair Corp.*, 328 U.S. 275, 285 (1946); *Coffy v. Republic Steel Corp.*, 447 U.S. 191, 196 (1980).

81. This Court has reasoned that an "employer" within the context of USERRA, is one with the individual power to hire, supervise, and eventually terminate. *Satterfield v. Borough of Schuylkill Haven*, 12 F. Supp. 2d 423, 438 (E.D. Pa. 1998).

82. Wells Fargo delegated to Mr. Chenna the performance of employment-related responsibilities with respect to Mr. Toure, including the authority to review and act upon Mr. Toure's requests for military leave in Workday, to conduct Mr. Toure's performance check-ins, to author his performance reviews, and to participate in decisions concerning his continued employment.

83. Mr. Chenna exercised that delegated authority when he complained of Mr. Toure's properly noticed military absence, when he raised that absence as a performance issue, when he withheld approval of Mr. Toure's military leave requests until after the requested dates had passed, and when he repeatedly injected Mr. Toure's military service into unrelated performance discussions.

84. Mr. Chenna is therefore an "employer" within the meaning of 38 U.S.C. § 4303(4)(A)(i) and is individually liable for the violations of USERRA alleged herein.

## **<u>COUNT I</u>**
## **DISCRIMINATION**
## **IN VIOLATION OF USERRA, 38 U.S.C. § 4311(a)**
***(Plaintiff v. All Defendants, jointly and severally)***

85. Mr. Toure incorporates the allegations contained in the paragraphs above as if fully set forth at length herein.

86. USERRA provides that a person who is a member of, applies to be a member of, performs, has performed, applies to perform, or has an obligation to perform service in a uniformed service shall not be denied initial employment, reemployment, retention in employment, promotion, or any benefit of employment by an employer on the basis of that membership,

application for membership, performance of service, application for service, or obligation. 38 U.S.C. § 4311(a).

87. An employer is considered to have engaged in action prohibited by 38 U.S.C. § 4311(a) if the person's membership, application for membership, service, application for service, or obligation for service is a motivating factor in the employer's action, unless the employer can prove that the action would have been taken in the absence of such membership, application for membership, service, application for service, or obligation for service. 38 U.S.C. § 4311(c)(1); 20 C.F.R. §§ 1002.22, 1002.23.

88. Military status is a motivating factor if the employer relied on, took into account, considered, or conditioned its decision on the employee's military-related absence or obligation. 20 C.F.R. § 1002.22.

89. Discriminatory motivation may be established by circumstantial evidence, including proximity in time between the employee's military activity and the adverse employment action, inconsistencies between the proffered reason and other actions of the employer, an employer's expressed hostility toward members protected by the statute together with knowledge of the employee's military activity, and disparate treatment of certain employees compared to other employees with similar work records or offenses. *Sheehan v. Department of the Navy*, 240 F.3d 1009, 1014 (Fed. Cir. 2001).

90. At all times relevant, Mr. Toure was a member of a uniformed service and had an obligation to perform service in a uniformed service within the meaning of 38 U.S.C. § 4303(13) and (16).

91. Defendants knew of Mr. Toure's military membership and obligations, having been informed of them at the time of his hire, having received his annual military schedule, having

received his written communication of October 6, 2025, and having received his repeated military leave requests in Workday.

92. Defendants denied Mr. Toure benefits of employment on the basis of his military membership and service, including by withholding approval of his military leave requests until after the requested dates had passed, by subjecting his time and attendance to heightened scrutiny, by converting his properly noticed military absences into adverse performance commentary, and by issuing him an informal warning in or around December 2025.

93. Defendants denied Mr. Toure retention in employment on the basis of his military membership and service when they terminated his employment on or about March 14, 2026.

94. Mr. Toure's membership and service in the Pennsylvania National Guard were motivating factors in each of the foregoing actions.

95. Defendants cannot prove that they would have taken any of the foregoing actions in the absence of Mr. Toure's membership and service in the Pennsylvania National Guard.

96. Defendants' proffered reason for Mr. Toure's termination is pretextual for the reasons set forth hereinabove.

97. Defendants' violations of USERRA were willful within the meaning of 38 U.S.C. § 4323(d)(1)(C), in that Defendants knew that their conduct was prohibited by USERRA or acted in reckless disregard of whether it was prohibited. Mr. Toure disclosed his military service at the time of his hire and expressly advised Mr. Chenna, in writing on October 6, 2025, that his military time was protected by law, and Defendants nonetheless continued and escalated the conduct alleged herein.

98. As a direct and proximate result of the aforementioned conduct, Mr. Toure suffered actual damages, including but not limited to lost wages, lost salary, and lost benefits of employment, all in the past, present, and future.

WHEREFORE, Plaintiff, Moustapha Toure, hereby requests this Honorable Court consider the above and grant relief in his favor, and against Defendants, jointly and severally, including an order requiring Defendants to comply with the provisions of USERRA; compensation for lost wages and benefits of employment suffered by reason of Defendants' violations pursuant to 38 U.S.C. § 4323(d)(1)(B); liquidated damages in an amount equal to the amount of lost wages and benefits pursuant to 38 U.S.C. § 4323(d)(1)(C); reinstatement to his former position or, in the alternative, front pay and front benefits; prejudgment and post-judgment interest; reasonable attorneys' fees, expert witness fees, and other litigation expenses pursuant to 38 U.S.C. § 4323(h)(2); and any such other relief this Court deems just and proper.

## COUNT II
## RETALIATION
## IN VIOLATION OF USERRA, 38 U.S.C. § 4311(b)
***(Plaintiff v. All Defendants, jointly and severally)***

99. Mr. Toure incorporates the allegations contained in the paragraphs above as if fully set forth at length herein.

100. USERRA prohibits an employer from discriminating in employment against, or taking any adverse employment action against, any person because such person has taken an action to enforce a protection afforded any person under USERRA, has testified or otherwise made a statement in or in connection with any proceeding under USERRA, has assisted or otherwise participated in an investigation under USERRA, or has exercised a right provided for under USERRA. 38 U.S.C. § 4311(b).

101. An employer is considered to have engaged in action prohibited by 38 U.S.C. § 4311(b) if the person's protected action is a motivating factor in the employer's action, unless the employer can prove that the action would have been taken in the absence of such protected action. 38 U.S.C. § 4311(c)(2).

102. Mr. Toure engaged in activity protected by USERRA when he exercised his right to be absent to perform service in the uniformed services, when he submitted his military leave requests through Workday, when he circulated advance notice of his military service, and when he asserted, in his October 6, 2025 communication to Mr. Chenna and in the discussions surrounding it, that his military time was protected by law.

103. Defendants took adverse employment actions against Mr. Toure after, and because of, that protected activity, including subjecting his time and attendance to heightened scrutiny, withholding approval of his military leave requests until after the requested dates had passed, disparaging his protected absences in performance reviews and discussions, issuing him an informal warning in or around December 2025, and terminating his employment on or about March 14, 2026.

104. Each of the foregoing actions was materially adverse and would dissuade a reasonable employee from exercising rights protected by USERRA.

105. The sequence of events supports a reasonable inference of causation: Mr. Chenna complained of Mr. Toure's military absence within days of his return from service in September 2025; Wells Fargo issued the informal warning approximately two (2) months after Mr. Toure's October 6, 2025 written assertion of his statutory rights; and Wells Fargo terminated Mr. Toure approximately five (5) months after that written assertion and approximately three (3) months after the warning.

106. Mr. Toure's protected activity was a motivating factor in each of the adverse actions alleged herein.

107. Defendants cannot prove that they would have taken any of those actions in the absence of Mr. Toure's protected activity.

108. Defendants' proffered reason for Mr. Toure's termination is pretextual for the reasons set forth hereinabove.

109. Defendants' violations of USERRA were willful within the meaning of 38 U.S.C. § 4323(d)(1)(C).

110. As a direct and proximate result of the aforementioned conduct, Mr. Toure suffered actual damages, including but not limited to lost wages, lost salary, and lost benefits of employment, all in the past, present, and future.

WHEREFORE, Plaintiff, Moustapha Toure, hereby requests this Honorable Court consider the above and grant relief in his favor, and against Defendants, jointly and severally, including an order requiring Defendants to comply with the provisions of USERRA; compensation for lost wages and benefits of employment suffered by reason of Defendants' violations pursuant to 38 U.S.C. § 4323(d)(1)(B); liquidated damages in an amount equal to the amount of lost wages and benefits pursuant to 38 U.S.C. § 4323(d)(1)(C); reinstatement to his former position or, in the alternative, front pay and front benefits; prejudgment and post-judgment interest; reasonable attorneys' fees, expert witness fees, and other litigation expenses pursuant to 38 U.S.C. § 4323(h)(2); and any such other relief this Court deems just and proper.

**JURY TRIAL DEMANDED.**

Respectfully submitted,

**HKM EMPLOYMENT ATTORNEYS LLP**

Date: September 18, 2026

By: *<u>/s/ Justin M. Bahorich</u>*

Justin M. Bahorich, Esq.
Pa. I.D. No. 329207
HKM Employment Attorneys LLP
220 Grant Street, Suite 401
Pittsburgh, PA 15219
(412) 310-2737
jbahorich@hkm.com

*Counsel for Plaintiff*